UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER PINEDA, JENNIFER DOMINGUEZ, ORLANDO RODRIGUEZ, FIDELINO GONZALEZ, JACOB GARCIA, and LUIS MENDEZ as parent and natural guardian of JEFFREY MENDEZ, *on behalf of themselves and others similarly situated*,<br><br>               Plaintiffs,<br><br>  -v-<br><br>NY WING KINGS, INC., WINGSTOP RESTAURANTS, INC., PAUL PROANO and CHAYANNE HALANI, *in their individual and professional capacity*,<br><br>               Defendants. | Case No. 16-cv-01256 (SJ)(SMG) |

## DEFENDANT WINGSTOP RESTAURANTS, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND (6)

DLA PIPER LLP (US)
Brian S. Kaplan
Garrett D. Kennedy
1251 Avenue of the Americas
New York, New York 10020
Tel.:  (212) 335-4500
Fax:  (212) 335-4501
brian.kaplan@dlapiper.com
garrett.kennedy@dlapiper.com

*Attorneys for Defendant*
*Wingstop Restaurants, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .......................................................................................................... 3

    I.   Wingstop, Generally ....................................................................................... 3

    II.  The Jackson Heights Store and Plaintiffs' Allegations................................. 3

ARGUMENT ............................................................................................................................... 6

    I.   Wingstop Should Be Dismissed from This Action as
        the Court Lacks Personal Jurisdiction over It ............................................... 6

        A.  Applicable Standard ................................................................................ 6

        B.  The Court Lacks General Jurisdiction over Wingstop........................... 7

        C.  The Court Lacks Specific Jurisdiction over Wingstop .......................... 9

    II.  Plaintiffs' Complaint Fails to State a Claim against Wingstop
        and Such Claims Therefore Properly Should Be Dismissed ..................... 11

        A.  Applicable Standard .............................................................................. 11

        B.  Plaintiffs Have Failed to Allege Any Facts Supporting that
            Wingstop Was Their Employer, Which It Was Not ........................... 12

CONCLUSION.......................................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Abdelkhaleq v. Precision Door of Akron*,
   2008 WL 3980339 (N.D. Oh. Aug. 21, 2008) ...................................................................14

*Agency Rent A Car System, Inc. v. Grand Rent a Car Corp.*,
   916 F. Supp. 224 (E.D.N.Y. 1996) ......................................................................................8

*Andrade v. Arby's Rest. Grp., Inc.*,
   2015 WL 6689475 (N.D. Cal. Nov. 3, 2015) .....................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S.Ct. 1937 (2009) .................................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955 (2007) .................................................................................12

*Bravo v. Established Burger One, LLC*,
   2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) ......................................................................15

*Cannon v. Douglas Elliman, LLC*,
   2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007) ...................................................................15

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147, 152 (2d Cir. 2002)......................................................................................12

*Chen v. Domino's Pizza, Inc.*,
   2009 WL 3379946 (D.N.J. Oct. 16, 2009).........................................................................14

*Continental Indus. Group, Inc. v. Equate Petro. Co.*,
   586 Fed. Appx. 768 (2d Cir. 2014)................................................................................8, 10

*Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*,
   29 N.Y.2d 426 (N.Y. 1972) .................................................................................................8

*DelBello v. Japanese SteakHouse, Inc.*,
   43 A.D.2d 455 (N.Y. App. Div. 1974) ................................................................................9

*Diaz v. Consortium for Worker Educ., Inc.*,
   2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010)...................................................................15

*Fischer v. Enter. Rent-A-Car Co.*,
   1996 WL 251426 (E.D.N.Y. Apr. 24, 1996) ..............................................................7, 8, 9

*Gisomme v. HealthEx Corp.*,
   2014 WL 2041824 (E.D.N.Y. May 15, 2014) ...................................................................15

*Gucci Am., Inc. v. Bank of China*,
   768 F.3d 122 (2d Cir. 2014)..................................................................................................8

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
   936 F.2d 759 (2d Cir. 1991)................................................................................................12

*J. E. T. Advert. Assocs., Inc. v. Lawn King, Inc.*,
   84 A.D.2d 744 (N.Y. App. Div. 1981) ...............................................................................8, 9

*James v. Countrywide Financial Corp.*,
   849 F. Supp. 2d 296 (E.D.N.Y. 2012) .................................................................................12

*Kilkenny v. Greenberg Traurig, LLP*,
   2006 WL 1096830 (S.D.N.Y. Apr. 26, 2006)......................................................................15

*Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012)..........................................................................................6, 7, 10

*Olvera v. Bareburger Grp. LLC*,
   73 F. Supp. 3d 201, 204 (S.D.N.Y. 2014) .....................................................................12, 13

*Peng Bai v. Fu Xing Zhuo*,
   2014 WL 2645119 (E.D.N.Y. June 13, 2014) .....................................................................15

*Sampson v. MediSys Health Network, Inc.*,
   2012 WL 3027850 (E.D.N.Y. Feb. 9, 2012),
   *adopted as modified,* 2012 WL 3027838 (E.D.N.Y. July 24, 2012) .......................................15

*Sheldon Estates, Inc. v. Perkins Pancake House, Inc.*,
   48 A.D.2d 936 (N.Y. App. Div. 1975) ..................................................................................9

*Sonera Holding B.V. v. Cukurova Holding A.*,
   750 F.3d 221 (2d Cir. 2014)..................................................................................................7

*Stroud v. Tyson Foods, Inc.*,
   91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015) ..................................................................6, 9, 10

*Tracy v. NVR, Inc.*,
   667 F. Supp. 2d 244 (W.D.N.Y. 2009) ................................................................................14

*Wiwa v. Royal Dutch Petroleum Co.*,
   226 F.3d 88 (2d Cir. 2000)....................................................................................................7

*Xue Lian Lin v. Comprehensive Health Mgmt., Inc.*,
   2009 WL 976835 (S.D.N.Y. Apr. 9, 2009) .........................................................................15

**STATUTES**

Fed. R. Civ. P. 12................................................................................................................ *passim*

Defendant Wingstop Restaurants, Inc. ("Wingstop") submits this memorandum of law in support of its motion to dismiss the claims set forth against it in the complaint ("Complaint" or "Compl.") of plaintiffs Peter Pineda, Jennifer Dominguez, Orlando Rodriguez, Fidelino Gonzalez, Jacob Garcia and Luis Mendez, as the parent and natural guardian of Jeffrey Mendez (collectively, "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction, and Fed. R. Civ. P. 12(b)(6), for failure to state a claim.[1]

## PRELIMINARY STATEMENT

Plaintiffs, former employees of NY Wing Kings, Inc. ("Wing Kings"), allege in their Complaint, *inter alia*, that they were not paid for certain hours worked or at the prevailing minimum wage rate in violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Wingstop is not now, nor has it ever been, Plaintiffs' employer. It has no role with respect to setting the terms and conditions of their employment, it does not supervise their work, and it certainly is not responsible for making wage payments to Plaintiffs or ensuring that same are timely and correctly paid. Simply put, Plaintiffs have improperly brought the present action against Wingstop and, accordingly, their claims against it should be dismissed.

By way of background, Wingstop is franchisor of restaurants specializing in chicken wings, and Wing Kings is one such franchisee. Wing Kings is independently owned and operated by defendants Paul Proano and Shayon Halani and, while it utilizes the "Wingstop" tradename, serves "Wingstop" products and uses "Wingstop" trade dress, Wing Kings is not owned or operated by Wingstop. In fact, pursuant to the franchise agreement entered into between Wingstop and Wing Kings, Wing Kings alone is responsible for controlling the working conditions of its employees, including making payments to employees and complying with

---

[1] True and correct copies of exhibits ("Ex. [_]") submitted in support of this Wingstop's motion to dismiss are annexed to the declaration of Mike Mravle, dated May 12, 2016 (the "Mravle Aff."), which is submitted herewith.

applicable wage and hour laws.  In short, the relationship between Wing Kings and Wingstop is nothing more than a standard, arms-length franchisor/franchisee relationship.

Presently, Wingstop moves to dismiss the claims against it both because (i) the Court lacks personal jurisdiction over it, and (ii) the Complaint fails to set forth factual allegations supporting that Wingstop employed Plaintiffs – because it did not do so.

With respect to jurisdiction, the Court lacks both general and specific personal jurisdiction.  As to general jurisdiction, Wingstop is a Texas corporation with its principal place of business in Dallas, Texas; it does not own or operate a single restaurant in New York State; and the mere existence of a franchisee such as Wing Kings within New York does not impute jurisdiction to Wingstop as a franchisor.  Similarly, the Court lacks specific jurisdiction: Plaintiffs do not allege any facts supporting that Wingstop "transacts business" in New York and, even if they did, they still do not allege a "substantial relationship" between any activity by Wingstop and the claims at issue.

Separately, the Complaint fails to state a claim against Wingstop and, accordingly, the claims against it should be dismissed.  Plaintiffs' claims require, as a threshold matter, that Wingstop be their "employer," but the Complaint fails to state any factual allegations establishing such a relationship.  This is, of course, because it never employed them.  Plaintiffs' Complaint instead relies on a single conclusory allegation in which they contend that Wingstop "maintained control, oversight, and direction over the Plaintiffs," but this boilerplate assertion fails to set forth any *factual* allegations – as required – to support an employment relationship. Courts dismiss such generic allegations as a matter of course.

Based on the foregoing, and for the reasons below, Wingstop respectfully requests that the Court grant its motion to dismiss Plaintiffs' claims against it.

2

## STATEMENT OF FACTS[2]

### I. Wingstop, Generally

Wingstop, a Texas corporation with its principal place of business in Dallas, Texas, is a franchisor and operator of restaurants that specialize in cooked-to-order, hand-sauced and tossed chicken wings. (Compl. ¶ 132; Mravle Aff., ¶ 2.) Wingstop is a wholly owned-subsidiary of Wingstop Inc., also a Texas corporation with its principal place of business in Dallas, Texas. (*Id.*, ¶ 3.)

Presently, approximately 870 restaurants operate under the "Wingstop" tradename across 39 states and six countries. (Mravle Aff., ¶ 4.) Of these, approximately 98% are independently owned and operated by franchisees pursuant to franchise agreements with Wingstop. (*Id.*) Only 19 restaurants are owned and operated by Wingstop itself and each of these company-owned restaurants is located in either Texas or Nevada. (*Id.*, ¶ 5.) Although there are five restaurants utilizing the tradename "Wingstop" in the New York, each is owned and operated by a franchisee and not Wingstop itself; neither Wingstop nor its parent Wingstop Inc. own or operate any restaurants in the State of New York. (*Id.*)

### II. The Jackson Heights Store and Plaintiffs' Allegations

Plaintiffs each allege that they are former employees of "'Wing Kings', a fast food establishment . . . located at 95-44 Roosevelt Ave., Jackson Heights, NY 11372" (the "Jackson Heights Store"). (Compl., ¶¶ 20, 38, 57, 73, 90, 109.) They contend, in relevant part, that during their employment at the Jackson Heights Store, they were "deprived . . . of their lawfully earned wages and overtime" and that they were "not provided . . . with any compensation at all during several weeks of their employment." (*Id.*, ¶¶ 8, 9.)

---

[2] As described herein, Defendant assumes the truth of the factual allegations in the Complaint solely for purposes of this Motion.

3

The Jackson Heights Store is independently owned and operated by Wing Kings, which in turn is owned and operated by defendants Paul Proano and Shayon Halani, as well as another individual. (*See* Mravle Aff., Ex. A.) Wing Kings is a franchisee of Wingstop and the terms of this contractual relationship are set forth in the Wingstop Restaurants Inc. Franchise Agreement for a Wingstop Restaurant, entered into by Wing Kings and Wingstop on or about August 20, 2014 (the "Franchise Agreement"). (*Id.*) The Franchise Agreement is governed by Texas law, with all disputes relating thereto subject to adjudication in Texas (*i.e.*, "in the state or federal court of general jurisdiction located closest to where [Wingstop] has its principal business address"). (*Id.*, §§ 24(b),(c).)

Among other things, the Franchise Agreement permits Wing Kings to use the "Wingstop" tradename, to install "Wingstop" trade dress, and to sell "Wingstop" products; sets certain product and advertising specifications and standards with which Wing Kings must abide; and establishes what payments are made by Wing Kings, as the franchisee, to Wingstop, as franchisor. (Mravle Aff., Ex. A.) However, the Franchise Agreement expressly does not create any "partnership, joint venture, agency, employment, personal services," or similar relationship between Wing Kings and Wingstop. (*Id.*, § 22.)

To this end, the Franchise Agreement provides that Wing Kings' employees are solely its employees, and are *not* employees of Wingstop. Specifically, it states that "Franchisee's [Wing Kings'] employees are under Franchisee's day-to-day control," and "Franchisee has sole responsibility and authority for, among other things, employee selection and promotion, hours worked, rates of pay, other benefits, work assigned, and working conditions." (Mravle Aff., Ex. A.*, § 22.) Indeed, Wing Kings, as the franchisee, is obligated to "communicate clearly with its employees in its employment agreements, human resource manuals, written and electronic

4

correspondence, paychecks, and other materials that Franchisee (and only Franchisee) is their employer and that [Wingstop], as the franchisor of Wingstop Restaurants, is not their employer . . . ." (*Id.*)

Plaintiffs' Complaint fails to set forth any factual basis to support that they were employees of Wingstop. Plaintiffs allege in conclusory fashion that they were "employed" by "Defendants" (*see, e.g.,* Compl., ¶ 2), and further appear to allege that Wingstop and Wing Kings are "joint employers," though they allege no facts which would support such a result. (*Id.*, ¶ 10.) To this end, Plaintiffs make a generic allegation that Wingstop "maintained control, oversight, and direction over the Plaintiffs, including timekeeping, payroll and other employment practices that applied to them," but provide no specifics to support this allegation (and, in fact, make a verbatim allegation against Wing Kings). (Compl., ¶¶ 130, 137.)

Indeed, the Complaint is telling for what it lacks, namely any allegation describing Wingstop's purported involvement in Plaintiffs' employment. Plaintiffs do not, for instance, claim that Wingstop made an offer of employment to them (it did not); that they were supervised by any Wingstop employees (they were not); that Wingstop oversaw the terms and conditions of their employment (it did not); that Wingstop set their pay rates or otherwise was involved in their compensation (it was not); that they ever worked at any Wingstop corporate location (they did not); or that Wingstop, as opposed to Wing Kings, played any specific role with respect to their current claims (it did not).

## ARGUMENT

### I. Wingstop Should Be Dismissed from This Action as the Court Lacks Personal Jurisdiction over It

#### A. *Applicable Standard*

Plaintiffs bear the burden to show that this Court has personal jurisdiction over Wingstop. *Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 59 (2d Cir. 2012). "[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists," including by demonstrating (i) "a statutory basis for personal jurisdiction over the defendant" and (ii) "that exercise of jurisdiction . . . is in accordance with constitutional due process principles." *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015) (*citing Thomas v. Ashcroft,* 470 F.3d 491, 495 (2d Cir. 2006); *Licci*, 673 F.3d at 59-60). The court "will not draw 'argumentative inferences' in the plaintiff's favor," nor will it "accept as true a legal conclusion couched as a factual allegation." *Id.* (*quoting Licci*, 673 F.3d at 59).

"[T]he breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Stroud*, 91 F. Supp. 3d at 385 (*quoting Thomas,* 470 F.3d at 495). As the present action is proceeding in New York, the reach of personal jurisdiction is determined by that State's laws. *Id.*

> Under New York law, "[f]or a plaintiff to demonstrate personal jurisdiction over a defendant . . . the plaintiff must show either that the defendant was present and doing business in New York within the meaning of C.P.L.R. § 301," known as general jurisdiction, "or that the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302," known as specific jurisdiction. . . . . "General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity"; whereas, "[s]pecific jurisdiction . . . permits adjudicatory authority only over issues that 'aris[e] out of or relat[e] to the [entity's] contacts with the forum."

*Id.* (*quoting Gucci Am., Inc. v. Bank of China,* 768 F.3d 122, 134 (2d Cir. 2014); *Reich v. Lopez,* 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014)).

6

Additionally, Courts must ensure that the exercise of personal jurisdiction is consistent with constitutional due process:

> The constitutional analysis under the Due Process Clause consists of two separate components: the "minimum contacts" inquiry and the "reasonableness" inquiry. . . . The "minimum contacts" inquiry requires us to consider "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." . . . The "reasonableness" inquiry requires us to decide "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."

*Licci*, 673 F.3d at 60 (*quoting Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)).

As set forth below, the Court here lacks both general and specific jurisdiction over Wingstop and, as such, Plaintiffs' claims against it properly should be dismissed.

### B. *The Court Lacks General Jurisdiction over Wingstop*

The Second Circuit has recognized that general jurisdiction only "is authorized where the defendant's 'affiliations with the State" are such that they render the defendant "***essentially at home in the forum State***.'" *Licci,* 673 F.3d at 60 n. 9 (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown,* __ U.S. __, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)) (emphasis added). Thus, a foreign corporation must be "doing business" in New York on "'a continuous and systematic" basis, *Fischer v. Enter. Rent-A-Car Co.*, 1996 WL 251426, at *2 (E.D.N.Y. Apr. 24, 1996) (*quoting McGowan v. Smith,* 52 N.Y.2d 268, 272 (N.Y. 1981)), with "a fair measure of permanence" ; "occasional[]" or "casual[]" contacts are insufficient. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000). To this end, the fact that a foreign corporation is affiliated with entities in New York, or even has some offices in New York, is insufficient to establish general jurisdiction. *See Sonera Holding B.V. v. Cukurova Holding A.,*

7

750 F.3d 221, 225 (2d Cir. 2014) (foreign corporation with New York affiliates and offices not "at home" in New York); *Gucci*, 768 F.3d at 136 (foreign bank with branches in New York not "at home" in state); *Continental Indus. Group, Inc. v. Equate Petro. Co.*, 586 Fed. Appx. 768, 769 (2d Cir. 2014) (plaintiff "has not alleged that [defendant] is headquartered or incorporated in New York, nor has [plaintiff] alleged facts sufficient to show that [defendant] is otherwise 'at home' in New York").

It is well-settled that "the mere existence of a garden-variety . . . franchisor-franchisee relationship is not sufficient to establish [general] jurisdiction." *Fischer*, 1996 WL 251426, at *2 (*citing Ross v. Colorado Outward Bound Schools, Inc.*, 603 F. Supp. 306, 310 (W.D.N.Y. 1985)). "New York courts have generally confirmed that . . . the fact that a franchisor licenses franchisees that operate in New York State will not subject the franchisor to personal jurisdiction in New York." *Id.* at *3. This is because the "activities of individuals operating . . . franchises cannot be attributed to the franchisors . . . [n]or does the control exercised over the franchisees by the [franchisor], in terms of supply specifications, etc., warrant a finding that the franchisees are agents or employees of [the franchisor]." *J. E. T. Advert. Assocs., Inc. v. Lawn King, Inc.*, 84 A.D.2d 744, 745 (N.Y. App. Div. 1981) (dismissing claims against franchisor for lack of personal jurisdiction); *see also Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*, 29 N.Y.2d 426, 432 (N.Y. 1972) ("[T]his court has never held a foreign corporation present on the basis of control, unless there was in existence at least a parent-subsidiary relationship," and such control is so "complete that the subsidiary is, in fact, merely a department of the parent.").

Accordingly, New York courts have dismissed claims against foreign franchisors for lack of general jurisdiction as a matter of course. *See Agency Rent A Car System, Inc. v. Grand Rent a Car Corp.*, 916 F. Supp. 224, 227 (E.D.N.Y. 1996) (citations omitted) (fact that franchisor's

8

product was sold by franchisee in New York was insufficient to establish general jurisdiction); *J.E.T. Advert. Assoc.*, 84 A.D.2d 744 (franchisor's control over franchisees did not establish that franchisees were agents of defendant such that general jurisdiction was proper); *Sheldon Estates, Inc. v. Perkins Pancake House, Inc.*, 48 A.D.2d 936 (N.Y. App. Div. 1975) (franchisee's activities in New York on behalf of franchisor, including solicitation of business, insufficient to subject franchisor to personal jurisdiction); *DelBello v. Japanese SteakHouse, Inc.,* 43 A.D.2d 455 (N.Y. App. Div. 1974) (franchisor not subject to personal jurisdiction even though it advertised in New York newspaper, had telephone negotiations with franchisee in New York, sent plans and other materials to New York, and engaged in other activities in New York).

There is no basis to depart from such well-established precedent here. Wingstop is a Texas corporation with a principal place of business in Dallas, Texas; it is not "headquartered or incorporated in New York," *Stroud*, 91 F. Supp. 3d at 386, and it does not own or operate any restaurants in New York. (Mravle Aff., ¶¶ 2, 5, 6.) It has no "continuous and systematic" contacts with New York, and its few "contacts" are limited to a handful of franchise agreements establishing "garden-variety . . . franchisor-franchisee relationship[s]," which cannot confer general jurisdiction. *Fischer*, 1996 WL 251426, at *2. In fact, the Franchise Agreement expressly provides that Wing Kings is ***not*** authorized to act as Wingstop's agent or on its behalf. (Mravle Aff., Ex. A, § 22.)

Simply put, Wingstop is "not 'at home' in New York" and not subject to the general jurisdiction of this Court. *Stroud*, 91 F. Supp. 3d at 386 (*citing Daimler*, 134 S.Ct. at 759-60) (dismissing claim against franchisor that was not located in New York).

   C.  *The Court Lacks Specific Jurisdiction over Wingstop*

Plaintiffs also cannot demonstrate that the Court has specific jurisdiction over Wingstop. Specific jurisdiction may be exercised where a defendant (i) "transacts any business" in New

9

York and (ii) the cause of action "aris[es] from" such transaction. *Licci*, 673 F.3d at 60 (*quoting Best Van Lines, Inc.*, 490 F.3d at 246). It exists only based upon the "'affiliation between the forum and the underlying controversy' . . . and is therefore subject to the State's regulation," and it is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Licci,* 673 F.3d at 60 n. 9 (*quoting Goodyear,* 131 S.Ct. at 2851; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8-9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

To show that a defendant "transacts business" in New York, a plaintiff must demonstrate that the defendant "purposely availed [it]self of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its law." *Stroud*, 91 F. Supp. 3d at 389 (*citing D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 104 (2d Cir. 2006)). To do so, courts consider four non-dispositive factors:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Cont'l Indus. Grp., Inc.*, 586 F. App'x at 770 (*quoting Agency Rent A Car System, Inc.*, 916 F. Supp. at 227).

Here, Plaintiffs do not allege any facts to support a claim that Wingstop "transacted business" in New York. Moreover, even assuming *arguendo* that Plaintiffs could show that Wingstop "transacted business" in New York – which they cannot – they still must show that their claims have "an articulable nexus, or a substantial relationship, between the claim asserted" and the transaction itself. *Stroud*, 91 F. Supp. 3d at 389 (*citing Licci,* 673 F.3d at 66). *See also*

10

*Commc'ns Partners Worldwide, Inc.*, 2005 WL 1765712, at *4 ("A cause of action 'arises from' a defendant's New York contacts if the contacts are 'substantially proximate to the allegedly unlawful acts.'") (citations omitted).  "[T]he business transacted by the foreign defendant in New York *must* 'bear a substantial relationship to the transaction out of which the instant cause of action arises.'"  *Commc'ns Partners Worldwide, Inc.*, 2005 WL 1765712, at *4 (*quoting McGowan v. Smith*, 52 N.Y.2d 268, 272 (N.Y. 1981)) (emphasis added).

Here, there is no "articulable nexus" or "substantial relationship" between Plaintiffs' claims and any business conducted by Wingstop (as distinct from Wing Kings, its franchisee).  Plaintiffs' claims allege, among other things, that they were not paid for certain hour worked or at rates prescribed by law.  (Compl., ¶¶ 8, 9.)  However, Plaintiffs' employment relationships with Wing Kings were expressly outside the scope of the Franchise Agreement:  it states in no uncertain terms that "Franchisee's [Wing Kings'] employees are under Franchisee's day-to-day control," and "Franchisee has sole responsibility and authority for, among other things, employee . . . hours worked, rates of pay, other benefits, work assigned, and working conditions."  (*Id.*, § 22.)  Simply put, there is no "articulable nexus" as the Franchise Agreement expressly contemplates that such matters are outside its scope, and Plaintiffs offer no factual allegations (nor can they) to support that Wingstop had any involvement in their alleged claims.

Given this, Wingstop respectfully submits that there is no basis to find specific jurisdiction over it with respect to Plaintiffs' claims.

## II. Plaintiffs' Complaint Fails to State a Claim against Wingstop and Such Claims Therefore Properly Should Be Dismissed

### A. *Applicable Standard*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is proper where a complaint fails to "state a claim upon which relief can be granted."  To survive a Rule 12(b)(6) motion to

dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a viable claim. *Ashcroft*, 556 U.S. at 678. Thus, a complaint must contain more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557). Likewise, allegations which are no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not" survive a motion to dismiss, *Twombly*, 550 U.S. at 555, as they are "not entitled to the assumption of truth" that may otherwise apply on a motions to dismiss. *Iqbal*, 556 U.S. at 679. *See also James v. Countrywide Financial Corp.*, 849 F. Supp. 2d 296, 321 (E.D.N.Y. 2012) ("vague and conclusory" allegations of "entitlement to overtime compensation under the FLSA and NYLL" were "insufficient to withstand a motion to dismiss") (citations omitted).

Evidence outside of the complaint may be considered on a motion to dismiss where such is integral to the complaint, and should not be disregarded "simply because plaintiff has chosen not to attach the [document] to the complaint or to incorporate it by reference." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991). In such instances, "a Rule 12(b)(6) motion need not be transformed into one under Rule 56 . . . ." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citation omitted).

**B.** ***Plaintiffs Have Failed to Allege Any Facts Supporting that Wingstop Was Their Employer, Which It Was Not***

It is axiomatic that Plaintiffs must allege that they were "employees" of Wingstop in order to state a claim against it under the FLSA or NYLL, as they seek to do. *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 204 (S.D.N.Y. 2014) ("Because the relevant sections

12

of the FLSA and NYLL apply only to employers, the [Complaint] can state a claim only against parties whom those statutes define as 'employers.'"). However, the Complaint fails to provide any factual allegations to support the (incorrect) proposition that Wingstop employed Plaintiffs – instead relying on vague, conclusory and boilerplate assertions – and, as such, their claims against Wingstop should be dismissed.

"The FLSA defines 'employer' as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Olvera*, 73 F. Supp. 3d at 204 (*quoting* 29 U.S.C. § 203(d)). "The statutory standard for employer status under NYLL is nearly identical . . . ." *Id.*

Given these statutes' vague definitions of "employer," courts turn to an "economic realities" analysis to determine whether an employer/employee relationship exists to ascertain whether the nominal employer exerts "formal" and a "functional" control over an employee. The "formal control" analysis examines "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Olvera*, 73 F. Supp.3d at 205 (citations omitted). The "functional control" analysis considers:

> (1) whether [the alleged employers'] premises and equipment were used for the plaintiffs' work; (2) whether the [alleged employers] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the alleged employers'] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [the alleged employers] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the alleged employers].

*Olvera*, 73 F.Supp.3d at 205-06 (*quoting Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71-72 (2d Cir. 2003)).

13

Here, Plaintiffs concede that they were employed by "'Wing Kings', a fast food establishment . . . located at 95-44 Roosevelt Ave., Jackson Heights, NY 11372." (Compl., ¶¶ 20, 38, 57, 73, 90, 109.)  However, "[c]ourts have consistently held that the franchisor/franchisee relationship does not create an employment relationship between a franchisor and a franchisee's employees," and thus Plaintiffs cannot state a claim against Wingstop and their claims against it should be dismissed.  *Chen v. Domino's Pizza, Inc.*, 2009 WL 3379946, at *3 (D.N.J. Oct. 16, 2009) (dismissing franchisor for failure to state a claim). *See also Abdelkhaleq v. Precision Door of Akron,* 2008 WL 3980339, at *4 (N.D. Oh. Aug. 21, 2008) (granting motion to dismiss as "the shared right to use the brand name . . . between a franchisor and a franchisee does not make the two a single entity for purposes of FLSA") (*quoting Marshall v. Shan–An–Dan, Inc.,* 747 F.2d 1084 (6th Cir. 1984)).

Moreover, Plaintiffs have not pled any factual allegations to support that they were employed by Wingstop, but rely on generic allegations which are insufficient to survive a motion to dismiss.  *See , e.g., Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) (dismissing claim where plaintiff failed to plead specific facts in support of "economic realities" analysis).  Plaintiffs do not allege, for instance, any facts establishing either "formal" control or "functional" control.  To the contrary, Plaintiffs' allegations rely on the conclusory assertion that they were employed by "Defendants," and that Wingstop "maintained control, oversight, and direction over the Plaintiffs, including timekeeping, payroll and other employment practices that applied to them." (Compl., ¶¶ 2, 137.)  This is insufficient to state a claim against a franchisor based on the premise that it "employed" a franchisee's employees.  *See Andrade v. Arby's Rest. Grp., Inc.*, 2015 WL 6689475, at *3 (N.D. Cal. Nov. 3, 2015) (dismissing claims against

franchisor as plaintiff's conclusory allegations of control failed to allege an employer/employee relationship with franchisor).

Courts in this Circuit consistently have rejected and dismissed causes of action based upon nearly identical barebones and conclusory allegations. *See, e.g., Gisomme v. HealthEx Corp.*, 2014 WL 2041824, at *3 (E.D.N.Y. May 15, 2014) (dismissing "joint employer" claim reliant upon "conclusory allegations" of "operational involvement," "control" and "general power over various employment decisions"); *Xue Lian Lin v. Comprehensive Health Mgmt., Inc.*, 2009 WL 976835, at *2 (S.D.N.Y. Apr. 9, 2009) (dismissing defendants where plaintiff relied on "legal conclusions" in alleging "economic realities" test); *Peng Bai v. Fu Xing Zhuo*, 2014 WL 2645119, at *4 (E.D.N.Y. June 13, 2014) (dismissing claim where plaintiff generally alleged the nominal employer "had the power to hire, fire, set wages, set work conditions, and maintain employment records").[3] There is no basis for a different result here.

---

[3] *See also Cannon v. Douglas Elliman*, *LLC*, 2007 WL 4358456, at *4 (S.D.N.Y. Dec. 10, 2007) (dismissing "joint employer" claim where plaintiff failed to allege "facts" but relied on recitation of legal elements); *Kilkenny v. Greenberg Traurig, LLP*, 2006 WL 1096830, at *4 (S.D.N.Y. Apr. 26, 2006) (dismissing purported joint employer where plaintiff alleged nothing but conclusory allegations); *Diaz v. Consortium for Worker Educ., Inc.*, 2010 WL 3910280, at *4 (S.D.N.Y. Sept. 28, 2010) (dismissing "joint employer" claim where plaintiff proffered "boilerplate" allegations mixed with specific "factual" allegations); *Bravo v. Established Burger One, LLC*, 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 8, 2013) (explaining that plaintiffs failed to plead a claim because they alleged no "specific facts, aside from the elements of the 'economic reality test'"); *Sampson v. MediSys Health Network, Inc.*, 2012 WL 3027850, at *12 (E.D.N.Y. Feb. 9, 2012), *adopted as modified,* 2012 WL 3027838 (E.D.N.Y. July 24, 2012) (dismissing a plaintiff's "joint employer" claim where plaintiff made a series of "conclusory allegations designed to satisfy the economic reality test factors," but offered nothing more).

## **CONCLUSION**

Based on the foregoing, and as set forth below, Defendant respectfully requests that the Court grant its Motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  New York, New York
        May 12, 2016

                                                DLA PIPER LLP (US)

                                                By:  /s/ Brian S. Kaplan
                                                      Brian S. Kaplan

                                              Brian S. Kaplan, Esq.
                                              Garrett D. Kennedy, Esq.
                                              1251 Avenue of the Americas
                                              New York, New York 10020
                                              Tel.:  (212) 335-4500
                                              Fax:  (212) 335-4501
                                              brian.kaplan@dlapiper.com
                                              garrett.kennedy@dlapiper.com

                                              *Attorneys for Defendant*
                                              *Wingstop Restaurants, Inc.*