UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER PINEDA, JENNIFER DOMINGUEZ, ORLANDO RODRIGUEZ, FIDELINO GONZALEZ, JACOB GARCIA, and LUIS MENDEZ as parent and natural guardian of JEFFREY MENDEZ, *on behalf of themselves and others similarly situated*,<br><br>                Plaintiffs,<br><br>  -v-<br><br>NY WING KINGS, INC., WINGSTOP RESTAURANTS INC., PAUL PROANO and CHAYANNE HALANI, *in their individual and professional capacity*,<br><br>                Defendants. | Case No. 16-cv-01256 (SJ)(SMG) |

**DEFENDANT WINGSTOP RESTAURANTS INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

DLA PIPER LLP (US)
Brian S. Kaplan
Garrett D. Kennedy
1251 Avenue of the Americas
New York, New York 10020
Tel.:   (212) 335-4500
Fax:   (212) 335-4501
brian.kaplan@dlapiper.com
garrett.kennedy@dlapiper.com

*Attorneys for Defendant*
*Wingstop Restaurants Inc.*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.   Plaintiffs Have Failed to Demonstrate that Wingstop
        Is Subject to Personal Jurisdiction in New York ......................................................... 2

        A.  Business Registration Does Not Subject Wingstop to General Jurisdiction ........... 2

        B.  Plaintiffs Have Failed to Demonstrate a Basis for Specific Jurisdiction ................ 5

    II.  Plaintiffs Have Failed to Demonstrate that They
        Pled an Actionable Claim against Wingstop ............................................................. 7

CONCLUSION ............................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*,
  975 F. Supp. 562 (S.D.N.Y. 1997) ...................................................................................4

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016)..................................................................................2, 3, 5

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
  90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015) ..........................................................................4

*Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*,
  586 F. App'x 768 (2d Cir. 2014) ......................................................................................6

*Daimler AG v. Bauman*,
  134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) ............................................................... *passim*

*Display Works, LLC v. Bartley*,
  2016 WL 1644451 (D.N.J. Apr. 25, 2016) ........................................................................5

*Hazim v. Schiel & Denver Publ'g Ltd.*,
  2015 WL 5227955 (S.D. Tex. Sept. 8, 2015), *aff'd* 2016 WL 2609772 (5th Cir. May
  5, 2016) ..............................................................................................................................5

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
  763 F.2d 55 (2d Cir. 1985)................................................................................................7

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) ..................................................................4

*In re: LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016) ..................................................................4

*In re: Zofran (Ondansetron) Prods. Liab. Litig.*,
  2016 WL 2349105 (D. Mass. May 4, 2016) ....................................................................4

*Keeley v. Pfizer Inc.*,
  2015 WL 3999488 (E.D. Mo. July 1, 2015) ....................................................................5

*Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012)................................................................................................5

*McCourt v. A.O. Smith Water Prods. Co.*,
  2015 WL 4997403 (D.N.J. Aug. 20, 2015) ......................................................................5

*Neeley v. Wyeth LLC*,
    2015 WL 1456984 (E.D. Mo. Mar. 30, 2015) ..........................................................................5

*Olvera v. Bareburger Grp. LLC*,
    73 F. Supp. 3d 201 (S.D.N.Y. 2014)......................................................................................10

*Pitts v. Ford Motor Co.*,
    127 F. Supp. 3d 676, 683 (S.D. Miss. 2015)............................................................................5

*U.S. Bank Nat. Ass'n v. Bank of Am., N.A.*,
    2015 WL 5971126 (S.D. Ind. Oct. 14, 2015) ...........................................................................5

*Wright v. Maersk Line, Ltd.*,
    2000 WL 744370 (S.D.N.Y. June 9, 2000) .............................................................................4

**STATUTES, REGULATIONS AND OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(2)..............................................................................................................1, 10

Fed. R. Civ. P. 12(b)(6)..............................................................................................................1, 10

N.Y. Bus. Corp. L. § 304 ................................................................................................................3

N.Y. Bus. Corp. L. § 1301 ..............................................................................................................3

Defendant Wingstop respectfully submits this reply memorandum of law (the "Reply") in further support of its motion to dismiss the claims alleged against it in Plaintiffs' Complaint, made pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction, and Fed. R. Civ. P. 12(b)(6), for failure to state a claim (the "Motion").[1]

## PRELIMINARY STATEMENT

Plaintiffs, former employees of defendant Wing Kings, allege in their Complaint, *inter alia*, that they were not paid for certain hours worked or at the prevailing minimum wage rate, as well as other purported wage and hour violations. Plaintiffs seek to draw Wingstop into this lawsuit by claiming that it "jointly employed" them; however, Wingstop is not now, nor has it ever been, Plaintiffs' employer and, indeed, both Plaintiffs' Complaint and their memorandum of law in opposition to the Motion (the "Opposition" or "Opp.") only further reaffirm this fact. Accordingly, Wingstop respectfully submits that it should be dismissed from this action.

Preliminarily, this Court lacks jurisdiction over Wingstop. First, there is no general jurisdiction as Wingstop is a foreign corporation with a principal place of business in Texas and, contrary to Plaintiffs' Opposition, Wingstop's registration to do business in New York does not confer jurisdiction, a fact reaffirmed by the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014), and its progeny. Second, with respect to specific jurisdiction, Wingstop does not transact business in New York nor, even if it did, could there be any nexus between such and the claims at issue, and the sparse "evidence" proffered in support of Plaintiffs' Opposition is both incorrect and irrelevant.

Beyond this, the Complaint fails to state a claim that Wingstop was Plaintiffs' "joint employer." Wingstop is a restaurant franchisor that entered into a conventional franchise

---

[1] Unless otherwise set forth herein, defined terms shall have the same meaning as set forth in Wingstop's Memorandum of Law submitted in support of the Motion (the "Memorandum of Law" or "Memo.").

agreement with Wing Kings, requiring Wing Kings to abide by certain standards with respect to the sale and promotion of Wingstop-brand products, but expressly excluding Wingstop from having any role in Wing Kings's employment practices. Plaintiffs offer no factual allegations to the contrary, instead relying on boilerplate assertions in their Complaint, but extensive precedent makes clear that such conclusory allegations cannot survive a motion to dismiss. Indeed, recognizing these deficiencies, Plaintiffs submit so-called "evidence" to save their claims, but even this is wholly irrelevant as it fails to address the critical element of a "joint employer" claim, namely whether Wingstop exercised control over Plaintiffs or Wing Kings's employment practices – which it did not do.

Based on the foregoing and as further set forth herein and in the Memorandum of Law, Wingstop respectfully requests that the Court grant its Motion.

## **ARGUMENT**

### I. Plaintiffs Have Failed to Demonstrate that Wingstop Is Subject to Personal Jurisdiction in New York

#### A. *Business Registration Does Not Subject Wingstop to General Jurisdiction*

As set forth in the Memorandum of Law, the Court lacks general jurisdiction over Wingstop. As explained by the Supreme Court in *Daimler*, such exists where a "corporate defendant" is "'essentially at home'" in a State, i.e., "*only* [in the State] where it is incorporated or maintains its principal place of business . . . ." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (*citing Daimler AG v. Bauman*, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)) (emphasis added). Here, Plaintiffs do not contend Wingstop is incorporated in New York (it is not) or has its principal place of business in New York (it does not), nor do they dispute the voluminous case law holding that a garden-variety franchisor/franchisee relationship cannot establish general jurisdiction over a franchisor, such as Wingstop. (*See* Memo., § I.B.)

2

Rather, Plaintiffs argue that because Wingstop is registered to do business in New York and has authorized the Secretary of State to accept service on its behalf, this necessarily subjects it to general jurisdiction here. (Opp., § III.A.1.) Plaintiffs are wrong, particularly in light of the Supreme Court's decision in *Daimler* and the Second Circuit's recent decision in *Brown*.

In *Brown*, the Second Circuit considered whether a foreign corporation's registration to do business in Connecticut, and its authorization of the Secretary of State to receive service on its behalf, conferred general jurisdiction. *Brown*, 814 F.3d at 630-41. The Second Circuit held that in light of the narrow holding in *Daimler*, the registration statute could not confer jurisdiction as, *inter alia*, it did not expressly require the foreign corporation to consent to general jurisdiction as a condition to registration in that State. *Id.* at 637 (noting "federal due process" prohibited turning "a run-of-the-mill registration and appointment statute into a corporate 'consent' – perhaps unwitting – to the exercise of general jurisdiction by state courts . . . ."). In so doing, the Second Circuit rejected a Connecticut Appellate Court decision to the contrary and seriously questioned whether a statute requiring consent to general jurisdiction would be constitutional in the first instance in light of *Daimler*. *Id.* at 641.

The same analysis applies here, and the same result is appropriate. Section 304(b) of New York's Business Corporation Laws, which requires foreign businesses to register in New York in order to do business, states: "No domestic or foreign corporation may be formed or authorized to do business in this state under this chapter unless in its certificate of incorporation or application for authority it designates the secretary of state as such agent." *See also* N.Y. Bus. Corp. L. § 1301 (setting forth requirements for authorization to do business in New York). The statute says **nothing** about submission to the general jurisdiction of the State of New York, much less unequivocally requiring registering companies to so consent. This is for good reason: the

3

drafters of New York's Civil Practice Law and Rules did not intend for "the mere existence of a certificate of authority to do business in New York" to serve "as a predicate of jurisdiction . . . ." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997) (*quoting* CPLR § 301, 1990 Practice Commentary C301:4).

While some New York courts prior to *Daimler* equivocated on this issue, those considering it since have affirmatively found that mere business registration does not confer general jurisdiction. *See Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 105 (S.D.N.Y. 2015); *see also In re: LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016) (*citing Brown*, 814 F.3d at 639) (explaining that "where the most natural reading of the provision does not provide general jurisdiction," then a court may not infer "consent" to general jurisdiction); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 1268267, at *2 (S.D.N.Y. Mar. 31, 2016) (same). As explained:

> After *Daimler*, with the Second Circuit cautioning against adopting "an overly expansive view of general jurisdiction," [*Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014)], ***the mere fact of [a defendant's] being registered to do business is insufficient to confer general jurisdiction in a state that is neither its state of incorporation or its principal place of business***. *See* [*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)].

*Chatwal*, 90 F. Supp. 3d at 105 (emphasis added). [2]

Notably, since *Daimler*, courts in other jurisdictions also have resoundingly found that general jurisdiction based on mere business registration is improper. *See, e.g., In re: Zofran (Ondansetron) Prods. Liab. Litig.*, 2016 WL 2349105, at *4 (D. Mass. May 4, 2016) (the

---

[2] This is consistent with substantial precedent in this Circuit predating *Daimler*. *See, e.g.*, *Wright v. Maersk Line, Ltd.*, 2000 WL 744370, at *1 (S.D.N.Y. June 9, 2000) ("[A]uthorization [to do business in New York] does not, in and of itself, constitute 'doing business' in the State so as to subject a foreign corporation to personal jurisdiction."); *Bellepointe*, 975 F. Supp. at 564 (holding that mere possession of license to do business in state was insufficient to confer jurisdiction).

4

defendant "did not consent to personal jurisdiction . . . by appointing a registered agent for service of process in the state"); *Display Works, LLC v. Bartley*, 2016 WL 1644451, at *9 (D.N.J. Apr. 25, 2016) (in light of *Daimler*, the "sweeping rule" that "registration equals general jurisdiction . . . cannot be the law").[3]  As succinctly stated by one court, if registration conferred general jurisdiction, "every foreign corporation transacting business in the state . . . would be subject to general jurisdiction here.  *Daimler* clearly rejects this proposition."  *Neeley v. Wyeth LLC*, 2015 WL 1456984, at *3 (E.D. Mo. Mar. 30, 2015).

Plaintiffs offer nothing to the contrary, and the only case law they do put forward predates *Daimler* and *Brown* and is inapposite in light of these restrictive holdings.  (*See* Opp., § I.A.1.)  Accordingly, Wingstop is not subject to the general jurisdiction of this Court.

**B.** ***Plaintiffs Have Failed to Demonstrate a Basis for Specific Jurisdiction***

As set forth in the Memorandum of Law, Plaintiffs cannot demonstrate that the Court has specific jurisdiction over Wingstop.  Specific jurisdiction exists only where a defendant (i) "transacts business" in New York and (ii) the cause of action "aris[es] from" or has a nexus with such transaction.  *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) (citation omitted).  Wingstop does not transact any business in New York, nor is there any nexus between the present claims and any activity by Wingstop in New York.  (*See* Memo., § I.C.)

---

[3] *See also U.S. Bank Nat. Ass'n v. Bank of Am., N.A.*, 2015 WL 5971126, at *6 (S.D. Ind. Oct. 14, 2015) ("Merely registering to do business . . . does not establish personal jurisdiction over a corporation."); *Pitts v. Ford Motor Co.*, 127 F. Supp. 3d 676, 683 (S.D. Miss. 2015) (business registration was insufficient to establish general jurisdiction); *McCourt v. A.O. Smith Water Prods. Co.*, 2015 WL 4997403, at *4 (D.N.J. Aug. 20, 2015) ("The single fact that Defendant registered to do business in New Jersey is insufficient to conclude that it 'consented' to jurisdiction here."); *Hazim v. Schiel & Denver Publ'g Ltd.*, 2015 WL 5227955, at *4 (S.D. Tex. Sept. 8, 2015), *aff'd* 2016 WL 2609772 (5th Cir. May 5, 2016) ("[E]ffecting service in the forum State on a registered corporate agent is not enough to show personal jurisdiction over the nonresident corporation."); *Keeley v. Pfizer Inc.*, 2015 WL 3999488, at *4 (E.D. Mo. July 1, 2015) ("A defendant's consent to jurisdiction must satisfy the standards of due process and finding a defendant consents to jurisdiction by registering to do business in a state or maintaining a registered agent does not.").

5

In determining whether an entity "transacts business" within New York, courts weigh four non-dispositive factors: an on-going contractual relationship with an in-state corporation, ongoing contacts with the state, the choice of law provision in a governing contract, and whether notice and payments are sent into New York. *Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 770 (2d Cir. 2014) (*quoting Agency Rent A Car System, Inc.*, 916 F. Supp. at 227). Plaintiffs make no allegations satisfying *any* of these factors in their Complaint, nor submit anything to address them in their Opposition. (*See* Memo., § I.C; Opp., § II.A.2.) Similarly, even if one could somehow divine such a "business transaction" – of which there is none – Plaintiffs offer nothing reflecting an articulable nexus between such phantom transaction and their claims, nor can they. (*See* Memo., § I.C.)

Recognizing this, Plaintiffs manufacture incorrect and misleading "factual" allegations which, even if true – and they are not – still fail to support the existence of specific jurisdiction. For instance, they contend Wingstop "has five locations in the State of New York" but, in doing so, willfully ignore the affirmation submitted in support of the Motion explaining that each such store is a franchisee and *is not owned or operated by Wingstop*. (Mravle Aff., ¶ 6.) They also purport that a New York State liquor license is registered under the tradename "Wingstop," but this is seriously misleading: the website cited by plaintiffs shows the license is *not* registered to Wingstop but a company called 3114 Steinway Inc., operating under the tradename "Wingstop." (*See* Opp. at p. 10.) This liquor license thus is registered to a franchisee – a completely different company – and *not* Wingstop, and cannot evidence Wingstop transacting business in New York.

Plaintiffs also argue specific jurisdiction exists simply because they allege FLSA and NYLL claims against Wingstop, and that the purported violations allegedly occurred in New York. This fails to establish jurisdiction: they present no evidence of any "transaction" in New

6

York by Wingstop, and the conclusory and unsupported allegations in the Complaint that Wingstop "maintained control" over Plaintiffs hardly do so. (*See* Memo., § I.C.) To the contrary, all evidence reflects that Wingstop did not engage in any in-state conduct with respect to these claims as, by way of example, the Franchise Agreement expressly provides that Wing Kings – *not* Wingstop – is responsible for all matters relating to Wing Kings's employees. (Mravle Aff., Ex. A, § 22.) Plaintiffs offer nothing to the contrary.

Nor is Plaintiffs' case law availing. They rely entirely on *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 59 (2d Cir. 1985), for the proposition that an out-of-state franchisor may be subject to specific jurisdiction in New York, but this case is inapposite as it involved a breach of a franchise agreement for a New York franchisee by an out-of-state defendant, where such was negotiated in New York and the franchisor regularly conducted business operations in the State. *Hoffritz*, 763 F.2d at 59. Nothing of the sort exists here.

## II. Plaintiffs Have Failed to Demonstrate that They Pled an Actionable Claim against Wingstop

Plaintiffs fail to set forth any *factual* allegations alleging that Wingstop was their "joint employer" with Wing Kings. (*See* Memo., § II.B.) Instead, they rely entirely on conclusory allegations, but extensive precedent makes clear this is insufficient as a matter of law and, accordingly, Plaintiffs' "joint employer" claim properly should be dismissed. (*Id.*)

As set forth in the Memorandum of Law, to state a "joint employer" claim, a plaintiff must allege that the nominal employer exercised either "formal control" or "functional control" over the employee. (Memo., § II.B.) Here, Plaintiffs offer no *factual* allegations to support either. (*See* Memo., § II.B.) For instance, with respect to "formal" control, they make no factual allegations that Wingstop had the power to hire and fire them; that they were supervised by Wingstop; that Wingstop had any role in determining their pay; or that Wingstop maintained

7

their employment records. Similarly, they do not plead facts supporting "functional" control, as they do not allege, *inter alia*, to have used Wingstop's "premises and equipment," to have worked "predominantly" for Wingstop, or to have been "supervised" by Wingstop.

The reason for these deficient pleadings is plain: Wingstop had nothing to do with Plaintiffs' employment by Wing Kings. Tellingly, Plaintiffs' Opposition offers nothing to the contrary as it, in turn, cites to only two allegations in their Complaint but each is conclusory and entirely devoid of any fact whatsoever. (Memo., § II.B.) First, they turn to the nonsensical allegation that "Wingstop owns and operates . . . the New York location owned and operated by Wing Kings, Inc. . . . ." (Opp., § III.B.) This allegation is internally inconsistent, conclusory, fails to allege that Wingstop exerted *any* control over Plaintiffs or Wing Kings, and is disproven by evidence submitted in support of the Motion. (*See* Memo., § II.B; Mravle Aff., ¶ 6, Ex. A.) Next, Plaintiffs turn to the vague allegation that "Wing Stop maintained control, oversight and direction over the Plaintiffs, including timekeeping, payroll and other employment practices . . . ." (Opp., § III.B.) Ignoring that this is patently false and disproved by the Franchise Agreement (Mravle Aff., Ex. A, § 22), this is no more than a bald recitation of an applicable legal standard and precedent is clear that such is insufficient to state a claim, as courts dismiss as a matter of course claims based on such conclusory allegations. (*See* Memo., § II.B [collecting cases].) Simply put, Plaintiffs' Opposition only reaffirms the Complaint's inherent deficiencies.

In an express recognition of these shortcomings, Plaintiffs turn to "evidence" outside their Complaint but even this fails to support their "joint employer" claim. (Opp. at p.16-17.) Specifically, they cite Wingstop's website which provides information concerning potential employment at a Wingstop-brand restaurant, and a provision in the Franchise Agreement requiring that franchisees maintain various records. (*Id*.) None of this "evidence" so much as

8

suggests that Wingstop had, much less exercised, "formal" or "functional" control over Plaintiffs' employment or Wing Kings's employment practices.

To the contrary, while the Franchise Agreement anticipates that Wingstop may maintain a website that "provides information about the Wingstop concept and the products and services that Restaurants offer," franchisees, and not Wingstop, have "***sole responsibility and authority*** for, among other things, ***employee selection and promotion***, hours worked, rates of pay, other benefits, work assigned, and working conditions." (Mravle Aff., Ex. A, §§ 9, 22 [emphasis added].)

Indeed, Plaintiffs' Opposition omits that if an individual clicks on the "Apply Now" button on the webpage referenced in their Exhibit C, one is brought to a webpage (https://wingstopjobs.clickandhire.net/) containing the following "Notice to Applicants":

> By completing the following assessment and employment application, you understand and agree to the following: (1) Wingstop Restaurants Inc. is a franchisor and does not own each and every Wingstop location that may accept your application or offer you a job; (2) By completing this application, you have applied only to the Wingstop location you selected and you have not applied to any other Wingstop location; (3) The decision to hire or not to hire you is made solely by the owner of the location where you have applied; (4) If you are hired, the terms and conditions of your employment will be set by the owner of the location that offered you a position; (5) If you are hired by a Wingstop location that is not owned by Wingstop Restaurants Inc., you will not be an employee of Wingstop Restaurants Inc., you will be employed by the owner of the franchise location where you are hired.

(*See* Declaration of Garrett D. Kennedy, dated June 6, 2016, ¶¶ 2-3, Exhibit A.)

Additionally, the franchisee's obligation to maintain certain general business records, as described in the Franchise Agreement, by its terms merely allows Wingstop access to such records for the purpose of conducting audits, none of which bears on any employment practice,

9

much less suggests that Wingstop exercised any control whatsoever over Plaintiffs' employment. (Mravle Aff., Ex. A, §§ 7(c)(24), 7(c)(25).)

Much like their "evidence," the case law relied upon by Plaintiffs is inapposite and unavailing. Plaintiffs purport that *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201 (S.D.N.Y. 2014), involved a situation "almost identical to the case at hand" (Opp. at p.14), but this is not so as, *inter alia*, the *Olvera* plaintiffs made numerous specific *factual* allegations regarding the alleged "joint employer" relationship. *See, e.g., id.* at 207. Plaintiffs have not done so here.

## **CONCLUSION**

Based on the foregoing, and as set further set forth in the Memorandum of Law, Wingstop respectfully requests that the Court grant its Motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:   New York, New York
         June 6, 2016

                            DLA PIPER LLP (US)

                            By:  /s/ Brian S. Kaplan
                                  Brian S. Kaplan

                            Brian S. Kaplan, Esq.
                            Garrett D. Kennedy, Esq.
                            1251 Avenue of the Americas
                            New York, New York 10020
                            Tel.:  (212) 335-4500
                            Fax:  (212) 335-4501
                            brian.kaplan@dlapiper.com
                            garrett.kennedy@dlapiper.com

                            *Attorneys for Defendant*
                            *Wingstop Restaurants Inc.*